*1025 OPINION.
Tbussell
: The negotiations between Price and Hatfield were had at a time when Price was experiencing financial embarrassments which culminated in his enforced bankruptcy a few weeks later. He was then striving to convert some of his interests into cash in order to avoid impending bankruptcy. For this purpose he was willing to and did offer to dispose of his interests in the mining property here in question for an amount of cash apparently not more than one-half of what he had expended in developing the mining property. Persons who acquire property under these circumstances and later organize a corporation for taking it over and managing it are, under the decisions of the Board in the Appeals of The Markenheim Co., 1 B. T. A. 1240; Pittsburgh Grinding Wheel Co., 2 B. T. A. 712, and Cross Mountain Coal Co., 2 B. T. A. 587, entitled to have the fair cash market value of the property they acquire under such circumstances ascertained and allowed for the purposes of invested capital and exhaustion deductions.
Both Hatfield and Hillis, who organized the taxpayer corporation, were men of large experience in the operation of coal prop *1026 erties in Pennsylvania. They knew the value of such properties, and especially the cost of the early development of a new mining operation, and the record clearly discloses that when they placed the valuation of $55,000 upon this lease they undertook to give to it a conservative estimated value.
The record also contains the testimony of two disinterested witnesses, both of whom had been mine operators, and one of whom had been for many years a valuation expert in the employ of the Bethlehem Steel Co. and the Pittsburgh Coal Co. They were both familiar with the taxpayer’s property and the improvements and development made thereon. Each of them testified that in his opinion the taxpayer’s lease on February 24, 1905, was worth at least $75,000; that in arriving at such valuation he took into consideration the advantages of the drift-mine situation, the valuable timber rights, the cost of the development which had previously been made, and the recoverable tonnage then in sight.
The value of a leasehold of coal lands is at all times a question of fact, which must be determined in the light of the evidence produced. The record of this appeal convinces us that the taxpayer’s claim of $55,000 is a conservative valuation, and we therefore find that the lease in question had, at the time paid in for stock, a value of not less than $55,000.

Order of redetermination will be entered on 15 days’ notice, under Rule 50.